

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. AP-76,455

### EX PARTE ARTHUR LEE WILLIAMS, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS CAUSE NO. 354897-A IN THE 208TH DISTRICT COURT FROM HARRIS COUNTY

**KEASLER, J., filed a concurring opinion, in which HERVEY, J., joined.**

To prove ineffective assistance of counsel under *Strickland v. Washington*,[1] an applicant must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the defense.[2] Assuming Arthur Lee Williams has established that counsel's performance was deficient because counsel failed to investigate and present mitigating evidence at the punishment phase, I agree with the majority that Williams has failed to establish resulting prejudice. I write separately to emphasize the weakness of the habeas evidence in support of Williams's claim of prejudice. It is not reasonably probable that the

---

[1] 466 U.S. 668 (1984).

[2] *Id.* at 687.

outcome of Williams's sentencing would have been different had this evidence been admitted.

Counsel's errors prejudice the defense when they deprive an applicant of a fair proceeding.[3] Establishing prejudice requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[4] "[T]he difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' The likelihood of a different result must be substantial, not just conceivable."[5]

Because Williams complains of counsel's failure to investigate and offer mitigating evidence, he must show that had counsel presented the available mitigating evidence, it is reasonably probable that at least one juror would have decided the issues differently.[6] "In assessing prejudice, we reweigh the evidence in aggravation against the totality of available

---

[3] *Strickland*, 466 U.S. at 686–89.

[4] *Id.* at 694; *accord Ex parte Gonzalez*, 204 S.W.3d 391, 393–94 (Tex. Crim. App. 2006).

[5] *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011) (quoting *Strickland*, 466 U.S. at 693, 697) (citation omitted).

[6] *Wiggins v. Smith*, 539 U.S. 510, 537 (2003).

mitigating evidence,"[7] including the evidence at trial and the habeas evidence.[8] We consider the weight of the evidence, not just its relevance or admissibility.[9]

The State admitted the following evidence in aggravation: Eight witnesses testified that Williams had a bad reputation for being peaceable and law-abiding. Officer Michael Blood, who apprehended Williams, testified that he stopped Williams's car in Edina, Minnesota. Williams exited his car, with one hand in his pocket, and walked toward Officer Blood's vehicle. After Williams was handcuffed, Officer Blood found an empty holster on Williams's person and bullets in his pockets. The police frisked the passenger who was riding in Williams's car, and found a pistol in her possession. The pistol, which fit the holster Williams was wearing, had been reported stolen from Burger Brothers Sporting Goods in Edina. Gregory John Lonke, manager of Burger Brothers, testified that the pistol found on Williams's passenger had been stolen during the break-in at his store.

Adline Rivard's testimony followed Lonke's. She testified that one morning around 4:00 a.m. while she was working at a Holiday Inn, Williams robbed her at gunpoint. She stated that he jumped over the counter, put his hand over her mouth, put a gun to her head,

---

[7] *Id.* at 534; *accord Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006).

[8] *Porter v. McCollum*, 130 S. Ct. 447, 453–54 (2009); *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000).

[9] *See Wiggins*, 539 U.S. at 534. *See, e.g.*, *Ex parte Gonzalez*, 204 S.W.3d at 399 (characterizing the applicant's relevant habeas evidence as "substantially greater and more compelling" than what was presented at trial); *Ex parte Martinez*, 195 S.W.3d at 731 (characterizing the aggravating factors as "severe" and the omitted habeas evidence as "strong").

tied her up, and then took money from the register. Juan Jorge testified after Rivard. He laid the foundation for the introduction of Williams's documented criminal history, which included two convictions for aggravated robbery, a conviction for escape from custody, and a conviction for aggravated criminal damage to property.

Counsel presented nothing in Williams's defense at the punishment hearing, but he asked the jury to consider all of the evidence admitted at the guilt phase. The guilt-phase evidence showed that Williams had close relationships with his family; was twenty-two years old at the time of the offense; had expressed remorse after the offense; had obtained a GED; and had taken college courses while he was previously incarcerated.

On habeas, Williams only presented two affidavits to support his claim in mitigation. One affidavit was from Joyce Williams, Williams's mother, and the other was from Deborah Williams, one of Williams's sisters. Joyce's affidavit reads as follows:

> [Williams]'s father and I were divorced before [Williams] was born. I raised him as a single parent, although his father would occasionally stay in the home. His father was an alcoholic who was often in prison and jail. When he stayed with us, he would often beat me. He would then leave the home, but inevitably would return and beat me again. [Williams], our only son, was exposed to his father's constant abuse.
>
> Because [Williams]'s father was a poor role model and I was often in poor health, [Williams] had little parental supervision. This led him to follow older teenagers, usually into trouble. He was often beaten and bullied by others. At an early age he was exposed to the drugs which were prevalent in our community. He abused both alcohol and drugs. Although he became chemically dependent, he never received any treatment.
>
> Williams had many good qualities. As a young boy, he was active in the Boy Scouts and played on teams in hockey, basketball and baseball. He loved animals. He obtained a GED at age 18 and took college courses while in prison. He was an avid reader, wrote poetry and was adept with computers. He pursued numerous cultural interests, such as crafts, photography, calligraphy, art, music and dancing. Most important, he was a devoted son and

brother who cared deeply about his family.

Deborah's affidavit was almost identical; she repeated the same general facts but from her point of view. Joyce and Deborah stated that they had been present and willing to testify at Williams's trial.

I would not give much weight to these affidavits. They contain only generalized statements and subjective descriptors, such as "often," "constant," and "usually." Neither affidavit specifically describes or illustrates, for example, the family abuse; how "often" Williams was bullied; what kind of drugs Williams abused; how often Williams abused those drugs and alcohol; or how Williams would get "into trouble." They also failed to explain how Williams demonstrated that he "was a devoted son and brother who cared deeply about his family." Moreover, the affidavits speculate that Williams became "chemically dependent" on alcohol and drugs. The affidavits are almost word-for-word, suggesting that Joyce and Deborah had nothing more specific or unique to add to the other's testimony. Because the affidavits are so general and duplicative of each other, the evidence is weak and unlikely to have persuaded a juror to decide the issues differently.[10]

The dissent concludes that the mitigating evidence found in the habeas record "substantially alters the sentencing profile that was presented to the jury" and as such "establishes a probability of a different outcome sufficient to undermine confidence in the jury's imposition of the death penalty." But it reaches this conclusion without looking

---

[10] *Cf. Cullen v. Pinholster*, 131 S. Ct. 1388, 1409–10 (2011) (judging duplicative evidence less likely to affect an outcome if evidence of the same facts already has been admitted).

through the proper lens of *Strickland*'s prejudice analysis in this context: that but for his counsel's deficiency, there is a reasonable probability he would have received a different sentence.[11] To support its conclusion, the dissent analogizes this case to *Porter v. McCollum*.[12]

The record in *Porter* stands in sharp contrast to the record before us today. The *Porter* Court indeed did find the required prejudice because the habeas evidence "described his abusive childhood, his heroic military service and the trauma he suffered because of it, his long-term substance abuse, and his impaired mental health and mental capacity."[13] But it did so (1) because the record significantly and substantially supported these claims and (2) only after balancing the mitigation evidence in its entirety against the introduced aggravating factors. The record in *Porter* contained depositions from Porter's brother and sister describing his abusive childhood including the frequency of his abuse, details of particular abusive episodes, and routinely witnessing his father abuse his mother resulting in substantial injury.[14] The record also contained testimony from Porter's commanding officer who recounted, in vivid detail, Porter's traumatic experience both during the Korean War and its lasting effects.[15] And according to Porter's brother, Porter began drinking heavily and would

---

[11] *Porter* v. *McCollum*, 130 S. Ct. 447 (2009).

[12] *Id.*

[13] *Id.* at 449.

[14] *Id.*

[15] *Id.* at 450.

often get into fights without remembering them.[16]  Further, there was testimony from a neuropsychologist who, after examining Porter, concluded he suffered from brain damage that "substantially impaired his ability to conform his conduct to the law and suffered from an extreme mental or emotional disturbance" as well as experiencing "substantial difficulties in reading, writing, and memory."[17]

The evidence Williams offers in support of his prejudice claim is decidedly weaker than that in *Porter* and does not support the conclusion that there is a reasonable probability that at least one juror would have answered the issues differently.  Without weighing the mitigating evidence against the case's "many aggravating factors,"[18] the dissent's general conclusion that the mitigation evidence found in the habeas record undermines the confidence in the jury's imposition of the death penalty is akin to stating the evidence appears to be mitigating and therefore could raise a conceivable likelihood of a different result.[19]  The Supreme Court has stated this type of analysis is insufficient.[20]

Based on the foregoing, I do not believe that Williams has shown resulting prejudice.

DATE FILED: June 13, 2012
DO NOT PUBLISH

---

[16] *Id.* at 451.

[17] *Id.*

[18] *Post*, at 18 (Alcala, J., dissenting).

[19] *See Harrington*, 131 S. Ct. at 792 ("The likelihood of a different result must be substantial, not just conceivable.")

[20] *Id.*